JOINER, Judge.
Colby Dwight Birdsong appeals his convictions for first-degree kidnapping, see § 13A-6-43, Ala. Code 1975, domestic violence by strangulation, see § 13A-6-138, Ala. Code 1975, violating a domestic-violence protection order, see § 13A-6-142, Ala. Code 1975, and three counts of first-degree burglary, see § 13A-7-5, Ala. Code 1975. Birdsong was sentenced to 25 years' imprisonment for the kidnapping conviction, 25 years' imprisonment for the burglary convictions,[1] and 15 years' imprisonment for the domestic-violence conviction, all to be served concurrently. He was also ordered to pay a $50 crime-victims-compensation assessment, court costs, and attorney fees. For violating the protective order, Birdsong was sentenced to 12 months' detention in the Morgan County jail and was ordered to pay a $25 crime-victims-compensation assessment, a $100 bail-bond fee, court costs, and attorney fees.[2]
*346 Facts and Procedural History
The evidence adduced at trial showed that the victim, Dannialle Huff, and Birdsong had known each other for several years before they became involved in a romantic relationship and began living together. After almost two years, Huff ended the relationship in July 2012, wanting "nothing further to do with [Birdsong]." (R. 72.)
On August 1, 2013, Birdsong drove to Huff's house and walked to the door. At trial, Huff testified that she was apprehensive about opening the door for him because she believed that he had been stalking her. At that time, her friend, Allen Gore, was visiting her and offered to answer the door. According to Huff, Birdsong could see Huff behind the door, and he told her that he had something for her. He then pulled a gun from his pants.
Huff testified that, as Birdsong stepped into the doorway, Gore tackled him. Huff then called the Morgan County Sheriff's department. After this incident, Huff filed a petition for a protection-from-abuse order, which was later granted on November 6, 2013.
Huff further testified that she had no additional contact with Birdsong until January 29, 2015. Huff testified that around 8:30 a.m. the morning of January 29, Birdsong's vehicle pulled into her driveway. According to Huff, Birdsong got out of his car and ran toward her door. Although she tried to lock the door, Birdsong forced the door open and came inside. Huff testified that Birdsong had three zip ties in his hand and that he "lassoed" Huff's right wrist with one of them. (R. 83.) Birdsong also had two knives with him. Although Huff tried to "talk him down," Birdsong told her "not to worry" and that he was "going to take [her] to heaven." (R. 87-88.)
Huff testified that Birdsong then got behind her and "bear-hugged" her around her neck. During this time, Huff passed out more than once. In order to get Birdsong to stop hurting her, Huff told him that she would go with him but that he needed to give her time to get dressed. According to Huff, Birdsong allowed her to do so but urged her to hurry up because he believed the police were on their way.
As she began to get dressed, Huff saw Birdsong's grandparents pull up in their red van. She then screamed for help. In an effort to stop her, Huff said that Birdsong jumped on top of her and choked her until she passed out and fell to the ground. According to Huff, when she woke up, she saw Birdsong's grandfather, Earl Birdsong, and his grandmother trying to convince Birdsong to leave. Although Birdsong resisted at first, Earl eventually convinced him to leave after informing Birdsong that the police were on their way. After Birdsong left, Huff called the police.
Morgan County Investigator John Dickson testified that a "BOLO" ("be on the lookout") alert was issued among law enforcement for Birdsong's vehicle. According to Investigator Dickson, Birdsong was later spotted by Marshall County deputies in a Wal-Mart discount store parking lot in Arab, Alabama, and arrested. After the Marshall County deputies notified Investigator Dickson of Birdsong's arrest, Dickson took Birdsong into custody.
On July 16, 2015, Birdsong was indicted by the Morgan County Grand Jury for one count of first-degree kidnapping, three counts of first-degree burglary, one count *347 of domestic violence by strangulation, and one count of violation of a protection-from-abuse order.[3] Following a jury trial, Birdsong was found guilty of the above offenses on June 8, 2016, and was sentenced on August 5, 2016.
On July 29, 2016, Birdsong filed a motion for a new trial. Following a hearing, the circuit court denied this motion on August 19, 2016; Birdsong filed a notice of appeal that same day.
On December 27, 2016, appointed appellate counsel filed a no-merit brief pursuant to Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and a motion to withdraw from representing Birdsong on appeal.[4] This Court granted that motion. We also appointed new appellate counsel and ordered further briefing on the following issue: Whether Birdsong's three first-degree burglary convictions violate the prohibition against double jeopardy.[5]
Discussion
I.
We first address Birdsong's challenge to his conviction for first-degree kidnapping. Although not a model of clarity, Birdsong's argument appears to be that the circuit court should have instructed the jury regarding the "voluntary-release" provision of § 13A-6-43(b), Ala. Code 1975. Under that provision,
"[a] person does not commit the crime of kidnapping in the first-degree if he voluntarily releases the victim alive, and not suffering from serious physical injury, in a safe place prior to apprehension."
According to Birdsong, there was evidence indicating that he voluntarily released Huff and that she did not suffer any serious physical impairment or injury. (Birdsong's brief, pp. 25-27.)
Initially, we question whether this issue was properly preserved for appeal. In Alabama, it is well settled that
" '[r]eview on appeal is restricted to questions and issues properly and timely raised at trial.' Newsome v. State, 570 So.2d 703, 717 (Ala. Crim. App. 1989). 'An issue raised for the first time on appeal is not subject to appellate review because it has not been properly preserved and presented.' Pate v. State, 601 So.2d 210, 213 (Ala. Crim. App. 1992). ' "[T]o preserve an issue for appellate review, it must be presented to the trial court by a timely and specific motion setting out the specific grounds in support thereof." ' McKinney v. State, 654 So.2d 95, 99 (Ala. Crim. App. 1995) (citation omitted)."
Ex parte Coulliette, 857 So.2d 793, 794 (Ala. 2003). Finally, an issue is not preserved for appellate review where no objection is made, before the jury retires, to an erroneous oral charge by the trial court. See Goins v. State, 521 So.2d 97, 99 (Ala. Crim. App. 1987) (citing Ex parte State of Alabama, 516 So.2d 846 (Ala. 1987) ).
Before the jury retired for deliberations, the circuit court asked Birdsong if he had any objections, exceptions, or requests for *348 supplemental jury instructions; he indicated that he did not. (R. 264.) In fact, Birdsong never raised the issue found in subsection (b) of § 13A-6-43, Ala. Code 1975, at any time during his trial, including in his motion for a new trial or in a requested jury charge. See § 13A-6-43(b), Ala. Code 1975 ("The burden of injecting the issue of safe release is on the defendant ...."). Therefore, this claim is not properly preserved for review.
II.
We next address Birdsong's argument that his convictions for domestic violence by strangulation and for violating the protection-from-abuse order were improper. (Birdsong's brief, pp. 28-30.) Specifically, Birdsong argues that these two convictions are invalid because, he argues, the January 29, 2015, incident and the August 1, 2013, incident forming the basis for Huff's protection-from-abuse order occurred more than 12 months after he and Huff had ended their relationship. He argues that those charges were void because he and Huff were not involved in a "dating relationship" pursuant to § 13A-6-139.1, Ala. Code 1975, of Alabama's domestic-violence statute. (Birdsong's brief, p. 30.)
Nothing in the record, however, shows that Birdsong challenged his convictions for those charges on that basis at any time during his trial, in his motion for a new trial, or even during his hearing on his motion for a new trial.[6] Thus, this claim is not properly preserved for appellate review. See Ex parte Coulliette, 857 So.2d at 794.
III.
We now turn to Birdsong's double-jeopardy challenges to his convictions.
A.
First, as to his first-degree-kidnapping and domestic-violence-by-strangulation convictions, Birdsong contends that double jeopardy applies because both charges arose out of the same act and both charges require proof of similar elements, such as physical injury, assault, trespass, and intimidation. (Birdsong's brief, p. 19, 23.) This argument is without merit.
In Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the United States Supreme Court announced a two-pronged test for addressing this issue. First, the threshold inquiry under Blockburger is whether the alleged statutory violations arose from the same act or transaction. Id. at 304, 52 S.Ct. 180. Second, if the offenses did arise from the same act or transaction, then we must determine whether each offense requires proof of an additional fact which the other does not. Id. If each offense does not require proof of an additional fact that the other does not, then double jeopardy applies. Id. On the other hand, " 'if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.' " Id.
With regard to the first prong from Blockburger, the circuit court made it clear before the jury retired for deliberations that Birdsong's first-degree-kidnapping charge arose out of the incident that occurred on January 29, 2015. (R. 243.) Additionally, the indictment makes clear that Birdsong's domestic-violence-by-strangulation *349 charge arose out of the same incident. (C. 9.) Having shown that the first prong in Blockburger is satisfied with respect to these two charges, we must now determine whether each offense required proof of an additional fact the other did not.
Alabama's first-degree-kidnapping statute, § 13A-6-43, Ala. Code 1975, provides:
"(a) A person commits the crime of kidnapping in the first degree if he abducts another person with intent to
"(1) Hold him for ransom or reward; or
"(2) Use him as a shield or hostage; or
"(3) Accomplish or aid the commission of any felony or flight therefrom; or
"(4) Inflict physical injury upon him, or to violate or abuse him sexually; or
"(5) Terrorize him or a third person; or
"(6) Interfere with the performance of any governmental or political function."
A person commits a domestic-violence-by-strangulation offense if "he or she commits an assault with intent to cause physical harm or commits the crime of menacing pursuant to Section 13A-6-23, by strangulation or suffocation or attempted strangulation or suffocation against a victim, as the term is defined in Section 13A-6-139.1." § 13A-6-138(b), Ala. Code 1975.
According to Birdsong, because each of these charges arose out of the same incident on the same date and because each offense, he says, requires proof of similar elements, double jeopardy applies. (Birdsong's brief, p. 19, 23.) This argument, however, is contrary to the plain language of both statutes. Specifically, each statute clearly indicates that each offense requires proof of an element that the other does not. Thus, under the second prong of Blockburger, double jeopardy does not apply here, and Birdsong is not entitled to relief on this issue.
B.
Birdsong further argues that his first-degree-kidnapping and domestic-violence-by-strangulation convictions are barred by principles of double jeopardy because they "arose from the burglary charge [and] one of the elements of proving burglary is the intent to commit a crime while inside a residence or building." (Birdsong's brief, p. 21.) Specifically, Birdsong argues that these offenses are, in essence, subsumed into his first-degree-burglary charge as underlying offenses.
Contrary to Birdsong's argument, the fact that the "crime" a person intends to commit for a first-degree-burglary offense may be either kidnapping or domestic violence does not mean that those offenses are subsumed into the first-degree-burglary charge so that a defendant cannot be charged with and convicted of each of those offenses separately. In fact, this Court has expressly held that, even where the intent is to commit a specific crime, such as kidnapping or domestic violence, burglary itself is a separate and distinct offense for which the defendant can be tried and convicted. See Dawson v. State, 675 So.2d 897, 903 (Ala. Crim. App. 1995). Thus, Birdsong's separate convictions for kidnapping and first-degree burglary based on an intent to commit kidnapping do not violate double-jeopardy principles. Likewise, his convictions for domestic violence by strangulation and first-degree burglary based on an intent to commit domestic violence do not violate double-jeopardy principles.
C.
Finally, Birdsong argues that his three first-degree-burglary convictions are *350 barred by the prohibition against double jeopardy. We agree.
The Alabama Supreme Court has held that "where there are two different methods of proving the offense charged in one statute, they [do not] constitute separate offenses." Sisson v. State, 528 So.2d 1159, 1162 (Ala. 1988). In King v. State, 574 So.2d 921 (Ala. Crim. App. 1990), this Court discussed whether a defendant could be convicted of two counts of first-degree rape arising out of a single event. In that case, we stated:
"[W]e must determine whether an individual may be convicted of two counts contained in the same statute. As our Supreme Court stated in Sisson, [supra ], ... '[T]he two subsections of a similar statute were merely alternative methods of proving the same crime, and therefore, did not constitute separate offenses.' ...
"....
"...[W]e find that the [defendant] could not be convicted of ... two counts of the same statute. 'The Double Jeopardy Clause ... protects against multiple punishments for the same offense. [citation omitted]. Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.' Brown v. Ohio, 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed. 2d 187 (1977)."
574 So.2d at 929-30. More recently, in Childs v. State, 238 So.3d 90 (Ala. Crim. App. 2017), we discussed whether a defendant could be convicted of two counts of first-degree burglary arising out of a single event. In that case, Childs was convicted of two counts of first-degree burglary under two subsections of § 13A-7-5, Ala. Code 1975, and he was sentenced to consecutive sentences as a result of those convictions. 238 So.3d at 91. We recognized that both counts of burglary were intended as alternative methods of proving the same offense and held that, because his conduct did not constitute two separate offenses, punishing Childs twice for the same offense-first-degree burglary-violated his double-jeopardy rights. Id. at 92. The same reasoning can be applied here.
In Alabama, a person commits first-degree burglary under § 13A-7-5, Ala. Code 1975, if
"he or she knowingly and unlawfully enters or remains unlawfully in a dwelling with intent to commit a crime therein, and, if, in effecting entry or while in dwelling or in immediate flight therefrom, the person or another participant in the crime:
"....
"(3) In effecting entry, is armed with a deadly weapon or dangerous instrument or, while in the dwelling or immediate flight from the dwelling, uses or threatens the immediate use of a deadly weapon or dangerous instrument against another person. The use of or threatened use of a deadly weapon or dangerous instrument does not include the mere acquisition of a deadly weapon or dangerous instrument during the burglary."
§ 13A-7-5(a), Ala. Code 1975. In the case before us, the record indicates that Birdsong was indicted on three counts of first-degree burglary as follows:
"COUNT II: The Grand Jury of said County further charges that before the finding of this indictment, Colby Dwight Birdsong, whose name is to the Grand jury otherwise unknown, did knowingly and unlawfully enter or remain unlawfully *351 in a dwelling of Dannialle Huff with intent to commit a crime therein, to-wit: kidnapping, and while effecting entry, he was armed with a deadly weapon or dangerous instrument, to-wit: a knife, in violation of Section 13A-7-5 of the Code of Alabama.
"COUNT III: The Grand Jury of said County further charges that before the finding of this indictment, Colby Dwight Birdsong, whose name the Grand Jury otherwise unknown, did knowingly and unlawfully enter or remain unlawfully in a dwelling of Dannialle Huff with intent to commit a crime therein, to-wit: kidnapping, and while effecting entry or while in the dwelling or in immediate flight therefrom, he used or threatened the immediate use of a deadly weapon or dangerous instrument, to-wit: a knife, in violation of Section 13A-7-5 of the Code of Alabama.
"COUNT IV: The Grand jury of said County further charges that before the finding of this indictment, Colby Dwight Birdsong, whose name is to the Grand Jury otherwise unknown, did knowingly and unlawfully enter or remain unlawfully in a dwelling of Dannialle Huff with intent to commit a crime therein, to-wit: domestic violence, and while effecting entry or while in the dwelling or in immediate flight therefrom, he used or threatened the immediate use of a deadly weapon or dangerous instrument, to-wit: a knife, in violation of Section 13A-7-5 of the Code of Alabama."
(C. 9.)
Although the defendant in Childs was convicted of two counts of first-degree burglary under two different subsections of the statute, Birdsong was convicted of all three counts of first-degree burglary quoted above under the same subsection of the statute. (C. 9; R. 271.) The language in each indictment quotes almost verbatim the language found in Alabama's first-degree-burglary statute, § 13A-7-5(a)(3), Ala. Code 1975. The only differences between them are the crimes that Birdsong intended to commit (i.e., kidnapping or domestic violence) and a slight variation on the clause pertaining to entry of a victim's dwelling. Under these circumstances, the counts were alternative methods of proving the same offense-burglary-and are not three separate and distinct offenses. Because Birdsong's conduct did not constitute three separate offenses, convicting Birdsong three times for the same offense violated his right to be free from double jeopardy. Accordingly, this case is remanded for the circuit court to vacate two of Birdsong's convictions for first-degree burglary.
Conclusion
The judgment of the circuit court is affirmed in part with respect to Birdsong's convictions for first-degree kidnapping, domestic violence by strangulation, and violating a domestic-violence protection order. This case is remanded, however, with instructions to the circuit court to vacate two of Birdsong's first-degree-burglary convictions. Due return shall be made to this Court within 42 days of the date of this opinion.
AFFIRMED IN PART AND REMANDED WITH INSTRUCTIONS.*
Windom, P.J., and Welch, Kellum, and Burke, JJ., concur.

At the sentencing hearing, the circuit court noted, and the parties agreed, that the three counts of first-degree burglary for which Birdsong was convicted "all arose from a single incident on January 29, 2015," and that, therefore, "there could only be one sentence imposed." (R. 287.)

With respect to Birdsong's sentence for violating the domestic-violence protection order, the record does not indicate whether Birdsong is to serve the term of his detention concurrently with or consecutively to the sentences for his remaining convictions. Accordingly, Birdsong's 12-month detention is to be served consecutively to his other sentences. See Rule 26.12, Ala. R. Crim. P. ("Separate sentences of imprisonment imposed on a defendant for two or more offenses shall run consecutively, unless the judge at the time of sentencing directs otherwise.").

The Morgan County Grand Jury returned two indictments. The indictment in CC-15-829 included one count (violation of a protection-from-abuse order); the indictment in CC-15-828 included five counts, one for each of the other charges against Birdsong.

In his brief, counsel identified three potentially arguable issues for appeal but ultimately determined that there was no merit to them.

Our order permitted counsel to address "any other issues" as well. New appellate counsel addressed other related issues, which we, in turn, address.

Birdsong requests that we review these convictions under the "plain-error" doctrine. (Birdsong's brief, p. 30.) The plain-error doctrine, however, applies only in death-penalty cases. See, e.g., Wiggins v. State, 193 So.3d 765, 775 (Ala. Crim. App. 2014) (quoting Pugh v. State, 355 So.2d 386, 389 (Ala. Crim. App. 1977) ("Indeed, it has been said that the plain-error doctrine 'applies to death penalty cases, but not to other convictions.' ")).
*Note from the reporter of decisions: On October 6, 2017, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On January 5, 2018, that court denied rehearing, without opinion.