Rel: February 21, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2024-2025

_____

## CR-2023-0435

_____

## Jerry Martin Honeycutt

## v.

## State of Alabama

## Appeal from Fayette Circuit Court
## (CC-21-431, CC-21-432, CC-21-433, and CC-21-434)

COLE, Judge.

Jerry Martin Honeycutt appeals his convictions for one count of attempted murder, a violation of § 13A-4-2 and § 13A-6-2, Ala. Code 1975; two counts of first-degree burglary, violations of § 13A-7-5(a)(2) and (3), Ala. Code 1975; and one count of illegally possessing a firearm because he falls within the class of certain persons who are forbidden to possess

a firearm, a violation of § 13A-11-72, Ala. Code 1975, and his resulting consecutive sentences of life imprisonment without the possibility of parole for his attempted-murder conviction and each of his first-degree-burglary convictions and life imprisonment for his certain-persons-forbidden-to-possess-a-firearm conviction.

### Facts and Procedural History

On March 26, 2021, Debra Pinion, Christopher Finch, Jonathan Frost, and Misti Freeman were present at Pinion's residence located in Fayette County. Honeycutt knew Pinion because Honeycutt's son, Henry Honeycutt, previously had been in a dating relationship with Pinion. Around 11:00 a.m., Honeycutt brought some food to Pinion's residence. Honeycutt and Finch had a friendly interaction before Finch and Freeman left Pinion's home shortly after Honeycutt's arrival. Thereafter, Honeycutt "lick[ed] his lips" while looking at Pinion, which made Pinion feel uncomfortable and scared. Pinion told Honeycutt that he could not keep coming to her home because she was no longer dating Honeycutt's son, Henry. At some point, Honeycutt left Pinion's home.

Around 8:00 p.m., Finch and Freeman arrived back at Pinion's home; Frost and Pinion were already present. Between 15 and 45

minutes after Finch and Freeman arrived at Pinion's home, Honeycutt knocked on Pinion's door. Pinion, knowing it was Honeycutt, told the others to say that she was not home and went to her bedroom. However, within a minute, Pinion heard a "commotion." Freeman answered the door and told Honeycutt that Pinion was not home. Honeycutt responded that he had heard Pinion, and he entered Pinion's home "push[ing] past" Freeman. Freeman followed Honeycutt and saw Honeycutt raise his gun at Finch. Thereafter, Freeman heard Honeycutt say Finch's name and "[d]ie" before seeing Honeycutt pull "the trigger three times." (R. 182-183, 229.) Honeycutt's gun did not fire. Finch "jumped up and tackled [Honeycutt] in the living room," and a physical altercation ensued over the gun. (R. 186.) Pinion, upon exiting the bedroom, saw Finch "on top of" Honeycutt struggling over the gun.

Finch testified that Honeycutt pointed the gun at him, that Honeycutt threatened to kill him, and that Honeycutt "squeeze[d] the trigger" three times. (R. 125, 127, 146.) A physical altercation ensued over the gun, and the altercation continued after Honeycutt pulled a knife from his pants. Pinion did not see Honeycutt pull the knife, but she recognized the knife as Honeycutt's from her previous times fishing with

3

Honeycutt. At approximately 9:00 p.m., after exiting Pinion's home as the physical altercation between Honeycutt and Finch began, Freeman called emergency 911. Finch was frantic after the altercation and proceeded outside where he shot the gun once or twice in the air.

Officer Randall Kelley, with the Berry Police Department, was the first officer to arrive on scene. He observed Finch in the doorway of Pinion's home holding a gun in his right hand and an unknown object (later determined to be a knife) in his left hand. Upon Officer Kelley's demand, Finch placed the gun and the knife in a chair outside the front door. Officer Kelley stated that, when he arrived, Honeycutt was lying on the floor with "a lot of facial trauma," possibly a broken nose, and some cuts. (R. 241-242, 244, 275.) While Finch was writing his witness statement, Officer Kelley noticed that Finch was bleeding from a small cut on his hand and provided some basic first aid. Finch told Officer Kelley that Frost was also present during the incident. Frost, who was only about 100 yards away in Freeman's vehicle, also provided a statement. Both Finch's and Frost's statements to Officer Kelley were consistent with each other. Finally, Officer Kelley located a spent shell casing near Honeycutt's vehicle in the driveway, which was the same

4

caliber as the other projectiles in Honeycutt's gun but was a different brand.

Deputy Todd Key, with the Fayette County Sheriff's Office, testified that he provided medical aid to Honeycutt until medical assistance arrived. Additionally, the State introduced into evidence Honeycutt's prior conviction for second-degree burglary. Thereafter, the State rested its case, and Honeycutt moved for a judgment of acquittal, which was denied by the trial court.

In Honeycutt's defense, Deputy Tanner Burleson testified that both Pinion and Freeman had told him that "they believed [Finch] had taken some pills earlier that day" but were not sure what they were. (R. 352, 362.) Chet Smith, Honeycutt's neighbor, testified that he had never seen Honeycutt with a gun or a knife. Finally, Ryan Clark, Honeycutt's long-time friend, testified that he also had never seen Honeycutt with a gun or knife.

Thereafter, the jury returned a guilty verdict as to each count submitted: one count of attempted murder, two counts of first-degree burglary, and one count of certain persons forbidden to possess a firearm. On August 3, 2023, Honeycutt's sentencing hearing was held. Honeycutt

was sentenced under the Habitual Felony Offender Act, § 13A-5-9, Ala. Code 1975, to consecutive sentences of life without the possibility of parole for his attempted-murder conviction and for each of his first-degree-burglary convictions and to life imprisonment for his certain-persons-forbidden-to-possess-a-firearm conviction.[1] This appeal followed.

<u>Discussion</u>

On appeal, Honeycutt raises three issues: (1) whether his convictions for two counts of first-degree burglary violate the Double Jeopardy Clause; (2) whether he received ineffective assistance of counsel at trial; and (3) whether there was sufficient evidence to sustain his convictions.

I.    <u>Double Jeopardy</u>

On appeal, Honeycutt argues that his convictions for two counts of first-degree burglary based on the same event violate the Double Jeopardy Clause of the Fifth Amendment to the United States

---

[1]The State provided reasonable notice to Honeycutt to invoke the Habitual Felony Offender Act and gave notice of at least eight prior felony convictions. (C. 49-50.) At the sentencing hearing, six of Honeycutt's prior felony convictions were admitted for the trial court's consideration. (Sent. R. 4-9.)

Constitution. (Honeycutt's brief, pp. 12-15.) The State concedes that these convictions violate the Double Jeopardy Clause. (State's brief, pp. 12-14.)

While this issue was not raised in the trial court, whether Honeycutt's convictions violate double-jeopardy principles is "a jurisdictional matter that cannot be waived." See Garrison v. State, 344 So. 3d 363, 365 (Ala. Crim. App. 2021). Therefore, this issue is properly before this Court.

On September 24, 2021, in case no. CC-21-432, Honeycutt was indicted for one count of first-degree burglary. The indictment read as follows:

> "The Grand Jury of said County charge that, before the finding of this indictment, Jerry Martin Honeycutt, whose name is otherwise unknown to the Grand Jury, did, on or about March 26, 2021, knowingly and unlawfully enter or remain unlawfully in a dwelling of another, to-wit: Debra Darlene Pinion, with intent to commit a crime therein, to-wit: Murder and/or Assault, in any degree, and while in effecting entry or while in the dwelling or in immediate flight therefrom, the said Jerry Martin Honeycutt, did cause physical injury to another person, to-wit: Misti Freeman and/or Christopher Finch, who was not a participant in the said crime, in violation of § 13A-7-5(a)(2) of the Code of Alabama."

7

(Supp. C. 86-87.)  Additionally, in case no. CC-21-433, Honeycutt was indicted for one count of first-degree burglary.  That indictment read as follows:

> "The Grand Jury of said County charge that, before the finding of this indictment, Jerry Martin Honeycutt, whose name is otherwise unknown to the Grand Jury, did knowingly and unlawfully enter or remain unlawfully in a dwelling of another, to-wit: Debra Darlene Pinion, with intent to commit a crime therein, to-wit: Murder and/or Assault, in any degree, and the said Jerry Martin Honeycutt, while in effecting entry, was armed with a deadly weapon or dangerous instrument, or, while in the dwelling or in immediate flight therefrom, the said Jerry Martin Honeycutt, did use or threaten the immediate use of a deadly weapon or dangerous instrument, to-wit: one (1) firearm and/or one (1) knife, a better description of which is otherwise unknown to the Grand Jury, in violation of § 13A-7-5(a)(3) of the Code of Alabama."

(Supp. C. 89-90.)  Honeycutt's indictments follow the language of Alabama's first-degree-burglary statute.  See § 13A-7-5(a)(2) and (3), Ala. Code 1975.

It is undisputed that Honeycutt's indictments describe alternative methods of proving the same offense.  It is well settled that

> "a defendant cannot be convicted of multiple counts of violating the same statute arising out of a single event. See, e.g., King v. State, 574 So. 2d 921, 929-30 (Ala. Crim. App. 1990) (holding that 'the appellant could constitutionally only be convicted of one count instead of the four counts of which he was convicted' because it was 'clear that only one act took place.')."

8

Garrison, 344 So. 3d at 367.

In Garrison, this Court held:

"Moreover, this Court has specifically held that a defendant cannot be convicted of multiple counts of first-degree burglary arising out of a single event. See Birdsong v. State, 267 So. 3d 343, 351 (Ala. Crim. App. 2017) (holding that a defendant cannot be convicted of three counts of first-degree burglary based on a single event), and Childs v. State, 238 So. 3d 90, 92 (Ala. Crim. App. 2017) (holding that a defendant cannot be convicted of two counts of first-degree burglary for the same offense)."

344 So. 3d at 367. Thus, Honeycutt's two convictions for first-degree burglary arising from one event violate Honeycutt's right to be free from double jeopardy.

As a result, this case must be remanded to the trial court for that court to vacate one of Honeycutt's convictions for first-degree burglary.

## II.   Ineffective Assistance of Counsel

Honeycutt next argues that he received ineffective assistance of counsel at his trial because, he says: (1) his trial counsel failed to raise a double-jeopardy claim as to his convictions for first-degree burglary; (2) his trial counsel failed to advance his defense at trial; (3) his trial counsel failed to impeach the State's witnesses with prior convictions; and (4) his trial counsel had conflicting loyalties because counsel had represented

Pinion in previous criminal cases. (Honeycutt's brief, pp. 15-21.) The State argues that Honeycutt failed to preserve this issue for appellate review. (State's brief, pp. 14-15.) We agree with the State.

> "It is well settled that ineffective-assistance-of-counsel claims cannot be presented on direct appeal when they have not been first presented to the trial court. Montgomery v. State, 781 So. 2d 1007 (Ala. Crim. App. 2000). Thus, '"[a]n ineffective-assistance-of-counsel claim must be presented in a new trial motion filed before the 30-day jurisdictional time limit set by Rule 24.1(b), Ala. R. Crim. P., expires, in order for that claim to be properly preserved for review upon direct appeal."' 781 So. 2d at 1010, quoting Ex parte Ingram, 675 So. 2d 863, 865 (Ala. 1996)."

Shouldis v. State, 953 So. 2d 1275, 1285 (Ala. Crim. App. 2006); see also Thomas v. State, 302 So. 3d 720, 731 (Ala. Crim. App. 2019).

At no point did Honeycutt present his ineffective-assistance-of-counsel claims to the trial court. Thus, Honeycutt failed to preserve this issue for appellate review. Honeycutt is due no relief on this issue.

### III. Sufficiency of the Evidence

Finally, Honeycutt argues that the evidence was insufficient to support his convictions for attempted murder and first-degree burglary.[2]

---

[2]It does not appear that Honeycutt is challenging the sufficiency of the evidence of his certain-persons-forbidden-to-possess-a-firearm conviction. Regardless, the evidence presented at trial was sufficient to support that conviction, and he is due no relief.

10

(Honeycutt's brief, pp. 22-28.) Specifically, as to his first-degree-burglary convictions, Honeycutt argues, that the State failed to prove the element that he either entered Pinion's residence unlawfully or remained in Pinion's residence unlawfully. (Honeycutt's brief, pp. 22-24.) As to his attempted-murder conviction, Honeycutt argues that the State failed to prove that he had the intent to kill. (Honeycutt's brief, pp. 24-28.) The State argues that Honeycutt failed to preserve this claim because, according to the State, he is alleging grounds on appeal that were "not raised during trial." (State's brief, p. 21.) Alternatively, the State asserts that Honeycutt's argument is meritless. (State's brief, pp. 21-26.)

At the conclusion of the State's case-in-chief, Honeycutt moved for a judgment of acquittal as to each charge "due to insufficient evidence" being presented to support a verdict beyond a reasonable doubt. (R. 343.) Although Honeycutt continued to make a more specific argument as to his first-degree-burglary charges, which he does not advance on appeal, Honeycutt's general ground that there was "insufficient evidence" to support a conviction preserved his appellate argument. See Ex parte Hall, 843 So. 2d 746, 749 (Ala. 2002) (finding that the general ground that there is "insufficient evidence" to support a conviction is sufficient

11

to preserve a more specific ground on appeal). We thus turn to the merits of Honeycutt's argument.

> "'"In determining the sufficiency of the evidence to sustain [a] conviction, this Court must accept as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution." Faircloth v. State, 471 So. 2d 485, 489 (Ala. Crim. App. 1984), affirmed, Ex parte Faircloth, [471] So. 2d 493 (Ala. 1985).'

"White v. State, 546 So. 2d 1014, 1017 (Ala. Crim. App. 1989)."

Tate v. State, 305 So. 3d 254, 257 (Ala. Crim. App. 2019).

## A. First-Degree Burglary

On appeal, Honeycutt argues that the evidence failed to establish that he either entered Pinion's residence unlawfully or remained in Pinion's residence unlawfully. Specifically, Honeycutt argues that no evidence established that he had trespassed; that Pinion did not tell anyone to deny Honeycutt entrance into the residence; that Freeman, not being a resident, had no authority to control who entered Pinion's residence; that no one attempted to block his entry into Pinion's residence; and that no evidence established that he remained unlawfully because no one told him to leave. (Honeycutt's brief, pp. 22-24.)

Section 13A-7-5, Ala. Code 1975, provides:

12

"(a) A person commits the crime of burglary in the first degree if he or she knowingly and unlawfully enters or remains unlawfully in a dwelling with intent to commit a crime therein, and, if, in effecting entry or while in dwelling or in immediate flight therefrom, the person or another participant in the crime:

" ....

"(2) Causes physical injury to any person who is not a participant in the crime; or

"(3) In effecting entry, is armed with a deadly weapon or dangerous instrument or, while in the dwelling or immediate flight from the dwelling, uses or threatens the immediate use of deadly weapon or dangerous instrument against another person."

Section 13A-7-1(3), Ala. Code 1975, states that "[a] person 'enters or remains unlawfully' in or upon premises when he is not licensed, invited or privileged to do so." See also Davis v. State, 737 So. 2d 480, 482-83 (Ala. 1999). Moreover, "[a]n unlawful entry or unlawful remaining constitutes the trespassory element of burglary, which element, when coupled with the intent to commit a crime inside, forms the nucleus of the burglary offense." Davis, 737 So. 2d at 482.

Here, around 11 a.m. on March 26, 2021, Pinion told Honeycutt that he "can't keep coming" to her residence. (R. 99-100.) When Honeycutt arrived back at Pinion's residence that evening, Pinion told Freeman,

Finch, and Frost to tell Honeycutt that she was not home. (R. 102.) Upon answering the door, Freeman told Honeycutt that Pinion was not home. (R. 177-178.) However, Honeycutt told Freeman that he had heard Pinion and proceeded to "push[] past" Freeman to enter Pinion's residence. (R. 178.) Once inside, Honeycutt drew a gun, pointed it at Finch, told Finch to "[d]ie" or "I'm going to kill you," and pulled the trigger of his gun. (R. 125, 127, 180-181, 185.)

Honeycutt's argument that he did not trespass and, thus, could not have committed first-degree burglary is meritless. "[T]he trespassory element of burglary" is met by proving "[a]n unlawful entry or unlawful remaining." Davis, 737 So. 2d at 482. Honeycutt was neither an owner or a lawful occupant of Pinion's residence, and he has not shown that he otherwise had a right to enter without permission. See Tate, 305 So. 3d at 259 (finding that "evidence was sufficient to show that Tate was not an owner or lawful occupant of the apartment and that he had no right to enter without permission"). Moreover, the evidence showed that Honeycutt forcefully entered the residence by "push[ing] past" Freeman to gain entry. The evidence supports the determination that Honeycutt was not "licensed, invited or privileged" to enter Pinion's home. Thus,

14

the State presented sufficient evidence to prove that Honeycutt's entry into Pinion's residence was unlawful, and Honeycutt is due no relief.

## B. Attempted Murder

Finally, Honeycutt argues that the State failed to present sufficient evidence to support his conviction for attempted murder. (Honeycutt's brief, pp. 24-28.) Specifically, Honeycutt argues that the evidence failed to prove that he had the intent to kill Finch. (Honeycutt's brief, pp. 24-28.)[3]

> " 'The elements of the crime of attempted murder are intent to kill and an overt act towards commission of that act.' Bradford v. State, 734 So. 2d 364, 369 (Ala. Crim. App. 1999) (citing Chaney v. State, 417 So. 2d 625 (Ala. Crim. App. 1982)).

---

[3]Honeycutt also argues that the State failed to prove that he had a motive to kill Finch, that Honeycutt's injuries compared to Finch's injuries were inconsistent with showing that Honeycutt was the culprit, that the witnesses had an opportunity to consult one another, and that no witness could have heard the gun "click" three times. (Honeycutt's brief, pp. 24-28.) However, these arguments are waived under Rule 28(a)(10), Ala. R. App. P., because Honeycutt fails to present any caselaw or other authority to support his arguments. Moreover, Honeycutt's arguments address the weight of the evidence, not its sufficiency, and were thus not preserved for appellate review. Even if they were preserved, Honeycutt is not entitled to relief because any conflicts in the evidence were for the jury to determine. A prima facie case was established, and the evidence was not so lacking as to make the verdict "wrong or unjust." See, e.g., Thompson v. State, 97 So. 3d 800, 810 (Ala. Crim. App. 2011).

"'"Attempted murder is a specific intent crime…. An attempt to commit murder requires the perpetrator to act with the specific intent to commit murder…. A general felonious intent is not sufficient." Free v. State, 455 So. 2d 137, 147 (Ala. Crim. App. 1984). To establish a prima facie case of attempted murder, the State must present evidence of the accused's specific intent to kill, and of "some overt act in part execution of the intent to commit the crime … which falls short of the completed crime; the difference between attempt and commission being that the act or step fails to produce the result intended." Broadhead v. State, 24 Ala. App. 576, 139 So. 115, 117 (1932).'

"Minshew v. State, 594 So. 2d 703, 704 (Ala. Crim. App. 1991)."

Murphy v. State, 108 So. 3d 531, 540-41 (Ala. Crim. App. 2012).

Here, the State presented sufficient evidence to prove that Honeycutt had the specific intent to kill Finch. Immediately after unlawfully entering Pinion's residence, Honeycutt drew his gun and pointed it at Finch. (R. 125, 180, 185.) Honeycutt then said Finch's name and either "[d]ie" or "I'm going to kill you" and pulled the trigger multiple times. (R. 125, 127, 146, 180-183, 229.) Honeycutt's intent was shown by his use of a deadly weapon and his preceding statements direct toward Finch. See Parris v. State, 885 So. 2d 813, 832 (Ala. Crim. App. 2001) (finding that "[i]ntent may be presumed from the use of a deadly weapon, the character of the assault, and other attendant circumstances

16

surrounding the assault" and is a question for the jury). The State thus presented sufficient evidence to prove that Honeycutt attempted to kill Finch. Honeycutt is due no relief.

Conclusion

For the above-stated reasons, the trial court's judgment is affirmed with respect to Honeycutt's convictions and sentences for attempted murder, certain persons forbidden to possess a firearm, and one count of first-degree burglary. However, this case is remanded to the trial court with instructions for that court to vacate one of Honeycutt's first-degree-burglary convictions, as well as the resulting sentence. Due return shall be made to this Court within 42 days of the date of this opinion.

AFFIRMED IN PART; REMANDED WITH INSTRUCTIONS.

Windom, P.J., and Kellum, Minor, and Anderson, JJ., concur.